UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RHONDA BATTREAL, | ) |
| Plaintiff(s), | ) |
| vs. | ) Case No. 4:19-cv-03140 SRC |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) |
| Defendant(s). | ) |

### Memorandum and Order

This matter comes before the Court on Plaintiff Rhonda Battreal's request for judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying Battreal's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq*. The Court affirms the Commissioner's decision.

**I.    Procedural history**

Battreal filed a Title II application for disability benefits on June 13, 2017.  Tr. 9, 262. She also filed a Title XVI application for supplemental security income on May 31, 2018.  Tr. 9, 269.  The Social Security Administration initially denied her application on August 16, 2017. Tr. 9, 183–87.  Battreal asked for a hearing before an ALJ on August 31, 2017, and the ALJ held a hearing on March 28, 2019.  Tr. 9, 145–73, 188.  The ALJ denied Battreal's application in a decision dated July 17, 2019.  Tr. 9–19.  On September 24, 2019, the Appeals Council denied Battreal's request for review.  Tr. 1–5.  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. Decision of the ALJ

The ALJ determined that Battreal has not engaged in substantial gainful activity from her alleged on-set date of August 8, 2011. Tr. 12. The ALJ found that Battreal has severe impairments of asthma, chronic obstructive pulmonary disease, tobacco abuse, mild multilevel facet arthropathy and degenerative disc disease of lumbar spine, patellofemoral disorder of knees, and mental conditions diagnosed as depression, bipolar disorder, post-traumatic stress disorder, anxiety, and personality disorder. Tr. 12. The ALJ found that Battreal does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 13–15.

After considering the entire record, the ALJ determined that Battreal had the residual functional capacity to perform sedentary work with the following limitations: she cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally engage in balancing, stooping, kneeling, crouching, and crawling; and can have no concentrated exposure to extreme heat, cold, dust, fumes, or other pulmonary irritants. Tr. 15. The ALJ found that Battreal can only perform routine tasks. Tr. 15. Battreal can work at a consistent pace throughout the workday, but not at a production rate where tasks must be completed within a strict time deadline. Tr. 15. She can also only perform work that requires occasional changes in the work setting, and can have occasional interaction with co-workers and the public. Tr. 15.

The ALJ found that Battreal could not perform any past relevant work. Tr. 18. Battreal has a limited education and can communicate in English. Tr. 18. After considering Battreal's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that Battreal can perform, including hand assembler, machine tender, and table worker. Tr. 18-19. Thus, the ALJ concluded that Battreal "was not under a disability."

Tr. 19. Battreal appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III. Legal standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

4

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016).

**IV.    Discussion**

Battreal argues that the ALJ committed reversible error by failing to fully and fairly develop the record. Doc. 10 at 3. Battreal contends that the record lacks medical evidence that addresses her physical and mental abilities to function in the workplace or that support the ALJ's RFC assessment. *Id*. at 4. Battreal further argues that the ALJ erred by substituting her own inferences from the medical records instead of further developing the record or obtaining or relying on an opinion from a treating physician. *Id*. at 5

"While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue,* 648 F.3d 605, 612 (8th Cir. 2011) (citing *Barrett v. Shalala,* 38 F.3d 1019, 1023 (8th Cir. 1994)). Pro se claimants still have the burden on establishing disability and ALJs are not required to function as the claimant's substitute counsel. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (citations omitted). Additionally, "'reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.'" *Haley v. Massanari,* 258 F.3d 742, 749 (8th Cir. 2001) (quoting *Shannon v. Chater,* 54 F.3d 484, 488 (8th Cir. 1995)).

Here, the ALJ held a forty-minute hearing and the record contained over 800 pages of medical evidence, including opinions from a reviewing physician, a reviewing psychologist, and Battreal's pulmonologist, at the time of the ALJ's decision. Tr. 145–73, 312–322, 402–1203. When the record contains this variety and amount of evidence, the Eighth Circuit has repeatedly found that the ALJ adequately developed the record. *See*, *e.g.*, *Haley*, 258 F.3d at 749–50 (8th Cir. 2001); *Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016). Moreover, as explained in detail below, the ALJ relied on the significant medical evidence in the record regarding both Battreal's

mental and physical impairments in reaching her RFC determination. Accordingly, the Court concludes that substantial evidence supports the ALJ's RFC determination.

### A.      Battreal's mental impairments

In her decision, the ALJ acknowledged the significant amount of treatment Battreal received for her "psychiatric abnormalities," including prescription medications, counseling, and even hospitalization. Tr. 17; *see also* 402–515, 546–570, 579–662, 892–932, 1005–1026, 1086–1100. But, as noted by the ALJ, Battreal's significant symptoms stemmed from situational stressors, such as moving because her house burned down, legal and medical problems with her children, marital problems, and a "generally chaotic life." Tr. 18; *see also* Tr. 476, 567, 648–49, 563, 898–908, 911–12, 918–20, 927. These types of situational stressors have not been considered disabling. *See Gates v. Astrue*, 627 F.3d 1080 (8th Cir. 2010); *Mitchell v. Sullivan*, 907 F.2d 843 (8th Cir. 1990). Moreover, consistent treatment generally stabilized her mood, Tr. 405, 414, 498, 546, 556, 563, 564, 566, 567, 896, 902, and though examiners often observed signs of psychiatric issues, they also concluded she had a relatively normal mental status. Tr. 403, 500, 524, 548, 554, 563, 669, 900.

To dispute the ALJ's findings, Battreal cites a litany of evidence in the record from Dr. McCool's examinations of Battreal and argues that "the record contains significant objective findings, supporting multiple physical and mental impairments, which require a medical opinion to determine Plaintiff's ability to function in the workplace." Doc. 10 at 6. Battreal further argues that the ALJ needed to request a medical source statement from Dr. McCool or order a consultive examination regarding her mental ability to function in the workplace. These arguments lack merit.

As an initial matter, Battreal simply misstates the law.  "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox v. Astrue,* 495 F.3d 614, 619 (8th Cir. 2007)).  There is no requirement, however, that an RFC finding be supported by a specific medical opinion.  *Id*. at 932 (RFC affirmed without medical opinion evidence); *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (same); *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012) (same); *see also Twyford v. Comm'r, Soc. Sec. Admin*., 929 F.3d 512, 518 (8th Cir. 2019) (stating that an ALJ's RFC determination need not "be supported by a specific medical opinion"; rather it need only "be supported by some medical evidence of the claimant's ability to function in the workplace" (quoting *Hensley*, 829 F.3d at 932)).  For the reasons explained above, the ALJ cited to a significant amount of medical evidence to support her RFC determination and the Court concludes that substantial evidence supports the ALJ's RFC determination.

Shifting to Battreal's other argument—that the ALJ needed to contact Dr. McCool or ordered a consultative examination—the circumstances did not require the ALJ to do either.   An ALJ "does not 'have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped.'"  *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372 (8th Cir. 2016) (quoting *Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir. 2004)).  Additionally, "[t]he ALJ is required to order medical examinations and tests *only if* the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."  *McCoy*, 648 F.3d at 612 (citing *Conley v. Bowen,* 781 F.2d 143, 146 (8th Cir. 1986)) (emphasis added). Further, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision."

8

*Haley,* 258 F.3d at 749–50 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Lastly, as previously stated, "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Id*. at 749 (quoting *Shannon,* 54 F.3d at 488).

Here, the record contains medical records, including reports from treating physicians such as Dr. McCool, dating back to 2013 related to Battreal's mental impairments. The record also contains a statement from a reviewing psychologist as well as a forty-minute hearing. Thus, the record contained sufficient information for the ALJ to make an informed decision and, as explained above, substantial evidence supports the ALJ's decision. Under these circumstances, the ALJ did not need to seek Dr. McCool's opinion nor did she need to order a consultative examination. *Haley*, 258 F.3d at 749–50. Even if the ALJ should have sought Dr. McCool's medical source statement, Battreal failed to show that the ALJ's failure to obtain this statement prejudiced her. *Haley*, 258 F.3d at 749 (citing *Shannon*, 54 F.3d at 488). Battreal concedes that "there is no guarantee that Dr. McCool would have provided a medical source statement" and does not indicate how his statement would have changed the ALJ's determination. Doc. 10 at 9. Thus, Battreal's argument fails on this basis as well.

Finally, to the extent Battreal cites to Dr. McCool's treatment notes in an effort to have this Court weigh the evidence, that goes beyond the scope of the Court's review. *Dols v. Saul*, 931 F.3d 741, 746 (8th Cir. 2019). In sum, the ALJ adequately developed the record and substantial evidence supports the ALJ's determination.

**B.      Battreal's physical impairments**

Battreal also makes several arguments relating to the ALJ's RFC determination with respect to her respiratory issues. First, Battreal argues that the ALJ needed to contact Dr. Pothineni, Battreal's treating pulmonologist, because his assessment lacked sufficient detail.

9

However, as explained above, an ALJ "does not 'have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped.'" *KKC ex rel. Stoner*, 818 F.3d at 372 (quoting *Stormo,* 377 F.3d at 806). In *KKC*, the Eighth Circuit found that an ALJ did not need to recontact the claimant's treating physician because, even though the physician's statement did not list or substantiate specific functional limitations, the record contained medical records, function reports, and testimony supporting the claimant's ability to perform a limited range of sedentary work. Similarly, the record in the present matter contains evidence consistent with Dr. Pothineni's opinion. Specifically, as the ALJ noted, Battreal underwent a treadmill test during which she walked for six minutes without supplemental oxygen, Tr. 16, 593–600, disqualifying her from a home oxygen prescription. Tr. 16, 593. Other evidence in the record also reflects that Battreal had normal, or near normal, blood oxygenation saturation. Tr. 432, 435, 439, 444, 449, 452, 516, 521, 629, 650, 667, 671, 676, 681, 710, 750, 766, 774, 785, 1120, 1125, 1129, 1133, 1147, 1163. Thus, the record was sufficiently developed and the ALJ did not need to contact Dr. Pothineni for further information. *See KKC ex rel. Stoner*, 818 F.3d at 372.

Battreal cites *Combs v. Berryhill*, 878 F.3d 642 (8th Cir. 2017) for support, but that case is readily distinguishable. There, the Eighth Circuit found that the ALJ failed to develop the record because the ALJ failed to seek clarification from the claimant's treating physicians regarding the meaning of "no acute distress" and "normal movement of all extremities." *Id*. at 646–47. Rather than seeking clarification, the ALJ improperly relied on his own interpretation of these terms when determining the weight to assign the opinions of two reviewing physicians, even though such findings were not necessarily relevant to the claimant's impairments. *Id*.

By contrast, the ALJ did not determine the weight to assign Dr. Pothineni's opinion based upon vague statements made by other physicians. Instead, she found it partially persuasive

10

because although it contained no detailed functional assessment, it nevertheless was consistent with the record. *See KKC ex rel. Stoner*, 818 F.3d at 372. Moreover, the ALJ's RFC determination demonstrates agreement with his opinion. The ALJ acknowledged Dr. Pothineni's indication that Battreal had shortness of breath with prolonged standing and upper extremity activity such as lifting. Tr. 18, 1203. Consistent with Dr. Pothineni's opinion, the ALJ limited Battreal to sedentary work, which requires very little lifting, standing, or walking, *see* 20 C.F.R. §§ 404.1567(a) and 416.967(a), and limited Battreal to jobs with no concentrated exposure to pulmonary irritants. Tr. 15. The ALJ's consideration and eventual agreement with Dr. Pothineni's opinion also undercuts Battreal's argument that the ALJ did not base her RFC determination on a medical opinion.

Battreal also argues that the record shows that she was prescribed supplemental oxygen and that she used oxygen during pulmonary rehabilitation. Yet, as the ALJ acknowledged, despite Battreal's insistence that she was prescribed supplemental oxygen, the record does not reflect that she was ever prescribed it. Battreal tacitly admits the record lacks any such evidence because she claims that the ALJ "could have easily solved this conundrum by contacting Dr. Pothineni to ask if he prescribes [her] supplemental oxygen." Doc. 10 at 13. As explained above, the ALJ did not have to contact Dr. Pothineni and as recently as March 2019, Dr. Pothineni did not include supplemental oxygen as part of Battreal treatment. Tr. 1203.

While Battreal points to medical records demonstrating that she used supplemental oxygen at times other than night, these records largely consist of her reporting that she used oxygen during the day. *See e.g.*, Tr. 1090, 1141, 1144, 1193. She points to no evidence that demonstrates that not having supplemental oxygen would prevent her from performing sedentary work with no concentrated exposure to pulmonary irritants.

11

Moreover, substantial evidence supports that she could perform at such a level without the supplemental oxygen. She did not qualify for it following a 2017 treadmill test. Tr. 593. Medical records show she was prescribed the use of oxygen at night with her CPAP or BiPAP. Tr. 539, 606, 627, 1193, 1197. A sleep study showed that her oxygen level dipped to a very low saturation level at night, Tr. 696, but the record does not reflect it dips below a near normal level during the day. Further, even though Battreal reported to Dr. Charity Sandvos that she used oxygen during the day, she visited Dr. Pothineni a week later and he made no mention of daytime oxygen. Tr. 606, 667. She also had normal oxygen saturation at her visit with Dr. Pothineni, despite having no oxygen at that appointment. Tr. 667. And while Battreal's examiners at times observed wheezing and shortness of breath, they often also observed clear lungs with normal respiratory effort. Tr. 652, 716, 719, 767, 938, 942, 1153, 1155, 1161. Additionally, Battreal indicated that her shortness of breath was relieved by oral prednisone, rescue inhalers, and rest, with no mention of daytime oxygen. Tr. 603. Finally, Battreal continued to smoke despite repeated instructions from her physicians to stop smoking. Tr. 160, 299, 403, 406, 410, 413, 415, 421, 437, 441, 476, 483, 491, 519, 535, 562, 582, 605, 674, 786, 911, 1107. The failure to follow these instructions cuts against her subjective reports of requiring oxygen. *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006); *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000).

In sum, the Court finds that Battreal's numerous arguments lack merits and concludes that substantial evidence supports the ALJ's RFC determination.

## V.     Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own

judgment for that of the ALJ.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007).  Having found that substantial evidence supports the ALJ's conclusions and that the ALJ correctly applied the legal standards, this Court affirms the ALJ's decision.

Accordingly, the Court affirms the decision of the Commissioner and dismisses Battreal's [1] Complaint with prejudice.

So Ordered this 25th day of March 2021.

*SLR.CR*

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**